**Marc P. Berger**
**Lara S. Mehraban**
**Judith Weinstock**
**Christopher J. Dunnigan**
**Kim Han**
**Brenda Wai Ming Chang**
**Attorneys for Plaintiff**
**U.S. SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**200 Vesey Street, Suite 400**
**New York, NY 10281-1022**
**(212) 336-0061 (Dunnigan)**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**EDWARD ESPINAL, and**<br>**CASH FLOW PARTNERS, LLC,**<br><br>**Defendants.** | **COMPLAINT**<br><br>**2:19 Civ. 21616**<br><br>**JURY TRIAL**<br>**DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), alleges the following against Defendants Edward Espinal ("Espinal") and Cash Flow Partners, LLC ("Cash Flow Partners") (collectively, "Defendants"):

## SUMMARY OF ALLEGATIONS

1.      From at least July 2016 until September 2019 (the "Relevant Period"), Espinal and an entity he owned and controlled, Cash Flow Partners, defrauded at least 90 investors from the Hispanic community out of at least $5 million. Defendants deceived investors into believing they were investing in a pooled fund that would purchase and renovate houses, and then flip the houses for profit. Defendants promised investors a guaranteed investment return that varied in

amounts between 1.25% and 4% per month (or 15% and 48% annually) by means of so-called "promissory notes." Espinal and Cash Flow Partners advertised on Spanish-language television, radio, and the internet, offering individuals with savings an opportunity to multiply their money five to ten times faster than at a bank and inviting them to call or attend an in-person conference for additional information.

2.      In reality, Cash Flow Partners' purported real estate "fund," Cash Flow Capital Group LLC ("Cash Flow Capital"), owned only two small properties in New Jersey, neither of which were ever sold. Instead of receiving returns from real estate investing, investors received monthly "returns" that were paid from new investor monies. Additionally, investor funds were used to bankroll the personal living expenses of Espinal, his family, and a Cash Flow Partners' employee ("Employee A"), as well as to sustain a separate fraudulent bank loan scheme run by Defendants and others.

### VIOLATIONS

3.      By virtue of the conduct alleged herein, each of the Defendants, directly or indirectly, singly or in concert, have engaged and are engaging in acts, practices, schemes and courses of business that constitute violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15. U.S.C. §§77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)], and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5]. In addition, Espinal is liable as a control person under Section 20(a) of the Exchange Act [15 U.S.C. §78t(a)] for Cash Flow Partners' violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

4.      Unless the Defendants are permanently restrained and enjoined, they will again

engage in the acts, practices, and courses of business set forth in this Complaint and in acts, practices, transactions, and courses of business of similar in type and object. Defendants should also be ordered to disgorge any ill-gotten gains or benefits derived as a result of their violations, whether realized, unrealized or received, and prejudgment interest thereon, and ordered to pay appropriate civil penalties.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

5.     The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. §77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. §78u(d)(1)], and seeks to enjoin the Defendants from engaging in the acts, practices and courses of business alleged herein.

6.     The Commission seeks a final judgment permanently enjoining the Defendants from committing violations of the securities law provisions that Defendants violated as alleged in this Complaint, ordering the Defendants to disgorge their ill-gotten gains and pay prejudgment interest thereon and to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to Section 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§77t(b), 77t(d), 77v(a)], and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u(e) and 78aa].  Defendants, directly or indirectly, have made us of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails.

8.     Venue lies in this District pursuant to Section 22(a) of the Securities Act [15U.S.C. §77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §78aa].  Certain of the events

giving rise to the Commission's claims occurred in the District of New Jersey, such as: (1) Cash

Flow Partners maintained its principal business office in this District; (2) Espinal and Cash Flow

Partners solicited clients in this District; and (3) Espinal is a resident of this District.

## DEFENDANTS

9.     Espinal, age 44, resides in Wayne, New Jersey.  Espinal is the principal and

founder of Cash Flow Partners.

10.     Cash Flow Partners is a New Jersey limited liability company formed in 2016.  Its

principal place of business in Saddle Brook, New Jersey.  During the Relevant Period, Cash

Flow Partners had satellite offices in New York, New York; Bronx, New York; Newburgh, New

York; Miami, Florida; Dallas, Texas; and Fairfax, Virginia. During the Relevant Period, Cash

Flow Partners purported to offer investment opportunities yielding guaranteed 15% to 48%

annual returns based on the purchase, remodel, and sale of real estate properties.  Cash Flow

Partners also purported to provide credit repair and assistance with securing bank loans.

## RELEVANT ENTITY

11.     Cash Flow Capital is the purported real estate investment fund Espinal marketed

as being "licensed" by the Commission. In reality, Cash Flow Capital was never registered with

the Commission and does not appear to be incorporated as a legal entity.

## FACTS

### The Defendants Recruit Investors

12.     Espinal and Cash Flow Partners induced individuals to invest in the company's

purported investment program through a variety of methods.

13.     First, Defendants ran a marketing campaign that featured Espinal and a former

telenovela actor as a spokesperson on Spanish language television channels, radio and the

internet.

14.     Second, Defendants created a YouTube page called "Cash Flow TV" which posted over one hundred videos touting Cash Flow Partners' loan services and investment opportunity. The videos encouraged prospective investors to call Cash Flow Partners or to attend live presentations for further information.

15.     Third, Espinal met with potential investors at Cash Flow Partners offices and at conferences where Defendants made live presentations about their investment program.

16.     Fourth, Defendants solicited individuals who obtained loans through a separate bank fraud scheme to invest the proceeds of their loans with Cash Flow Partners.[1]

17.     Defendants made no effort to limit the offering to accredited or sophisticated investors.

**Defendants Sold Investors Promissory Notes**

18.     Cash Flow Partners issued "promissory notes" to investors guaranteeing varying monthly rates of returns between 1.25% and 4%.

19.     Earlier investors in the Relevant Period were offered higher rates of return.

20.     In addition, Defendants promised investors higher guaranteed returns if they invested more money. For example, Investor A was initially guaranteed a monthly return of 1.25% on his $30,000 investment. When Investor A agreed to increase his total investment to $85,000, Cash Flow Partners increased the investor's monthly guaranteed percentage to 2%.

21.     Once an investor agreed to the terms, the investor signed a promissory note that stated the amount he or she had invested and the monthly interest payment he or she would

---

[1] Defendants' related bank fraud scheme is not the subject of this civil Complaint by the Commission.

receive. The promissory note also stated that the investor would receive his or her original investment back at the later of either one year from the date of the promissory note or 60 days after written notice demanding payment.

22.    Espinal or another representative of Cash Flow Partners counter-signed each of the promissory notes.

**The Defendants Made Misrepresentations to Investors**

23.    In the course of soliciting investors, Espinal, and under his direction, sales agents of Cash Flow Partners made several material misrepresentations. All of these representations were false. First, they told investors that their investments would be pooled with other investor funds to acquire residential real estate properties, remodel them, and sell them at a higher price. However, instead of being pooled to purchase and remodel real estate, investor funds were used to pay earlier investors their monthly "returns," to bankroll the personal living expenses of Espinal, his family, and Employee A, and to sustain the related fraudulent bank loan scheme referred to in Paragraph 16.

24.    Second, Defendants guaranteed payment of the monthly returns, which they said would be derived from profits earned on flipping Cash Flow Partners' portfolio of houses. In reality, no profits from flipping houses from which monthly returns were paid because no houses were sold.

25.    Third, Espinal marketed Cash Flow Partners' "real estate fund" Cash Flow Capital, as being "licensed by the SEC (Securities and Exchange Commission)." Neither Cash Flow Partners, nor Cash Flow Capital, were "licensed" by the Commission.

26.    Fourth, Espinal stated that he had more than 25 years of experience in the investment market. Prior to starting Cash Flow Partners in 2016, Espinal had worked in a real

estate company as a realtor brokering rental properties, not as a professional investor or in the securities industry.

27.     Fifth, Cash Flow Partners' website listed a portfolio of eight residential properties, one of which Cash Flow Partners purported to have sold. However, of the eight properties listed on its website, Cash Flow Partners had only purchased two of the properties. Collectively, only approximately $355,000 was spent to purchase the houses. Moreover, the property that was listed as "sold" had not, in fact, been sold but was being used as a residence by Employee A.

**Examples of Espinal's Fraudulent Scheme**

*Investor A*

28.     Investor A invested a total of $85,000 with Cash Flow Partners beginning in or around September 2018.

29.     Investor A visited Cash Flow Partners' offices and personally spoke with Espinal and an employee of Cash Flow Partners.

30.     Espinal and the employee represented to Investor A that Cash Flow Partners invested in real estate by buying houses wholesale and then selling them.

31.     Investor A initially invested $35,000, which purportedly entitled him to a 1.25% monthly return. Investor A invested another $50,000 over the next six months. When Investor A's investment reached $85,000, his monthly return for all of his investment increased to 2%.

32.     In May 2019, Investor A failed to receive his monthly payment from Cash Flow Partners. He requested that his funds be returned to him. Since his request, he has received neither his monthly payments, nor a return of his principal.

### *Investor B*

33.     In or around August 2018, Investor B invested her life savings of $50,000 with Cash Flow Partners.

34.     Investor B first learned about Cash Flow Partners from television advertisements.

35.     Investor B contacted Cash Flow Partners and was invited to a conference by the company.

36.     At the conference, Espinal represented to potential investors that funds invested would be used to buy, repair, and sell homes that were in foreclosure.

37.     Defendants also presented individuals at the conference who identified themselves as existing, satisfied investors.

38.     At the conference, Espinal personally reassured Investor B that her money would be "safe."

39.     Investor B was guaranteed a monthly return of 2%.

40.     Investor B received five months of "returns" on her $50,000 investment. Investor B became concerned about her investment when she requested documents from Cash Flow to prepare her tax return and was not provided with any.  On or around March 22, 2019, Investor B requested her money back.  A Cash Flow Partners employee told Investor B that she would get her initial investment back in 60 days.  Cash Flow Partners then stopped making payments to Investor A and did not return her $50,000.

### *Investor C*

41.     Investor C invested $200,000 with Cash Flow Partners in or around January 2019.

42.     Investor C learned about Cash Flow Partners through its advertising on Spanish language television.

43.     Investor C went to Cash Flow Partners' offices multiple time before investing, and personally met with Espinal.

44.     Espinal represented to Investor C that Cash Flow Partners bought and sold properties.

45.     Investor C was purportedly entitled to a 1.67% monthly return.  Defendants ceased paying Investor C his monthly payment in or around April 2019.

**Defendants Misappropriated Investor Funds**

46.     The money from investors and from the fraudulent loans was deposited and commingled in accounts in the name of Cash Flow Partners, and then transferred to and from accounts in the names of other entities related to Cash Flow Partners, which were controlled by Espinal or other Cash Flow Partners employees.

47.     Espinal used investor funds to pay his personal expenses and the expenses of Employee A, to pay purported monthly investment returns to earlier investors, and to make payments on loans from the related fraudulent loan scheme to keep the loan scheme going referenced in Paragraph 16.

48.     Between January 2016 and June 2019, Defendants misappropriated over $1.4 million dollars out of Cash Flow Partners, including for the following expenses:

- approximately $125,000 for car payments, including payments to Mercedes and BMW;

- approximately $312,000 for travel, including a cruise and a trip to Brussels for Espinal and Employee A;

- approximately $1 million dollars withdrawn in cash;

- at least $10,000 on tuition payments to a university;

- several thousands of dollars spent on spas and retail clothing stores.

49.    Investor funds were also spent on maintaining the Cash Flow Partners' daily operations, including paying employee salaries and overhead expenses.

50.    Although investors initially received their monthly "interest" payments, in or around the first quarter of 2019, Cash Flow Partners began defaulting on the promissory notes.

51.    When investors called or physically went to Cash Flow Partners' offices to inquire about the missing payments and/or to request return of their initial investment, Espinal or other Cash Flow Partners employees falsely reassured the investors that their monies were forthcoming.

52.    From at least July 2016 until September 2019, Defendants defrauded over 90 investors of at least $5 million by promising a guaranteed return on their investment that would be generated by pooling investor funds to purchase, remodel, and sell residential real estate.

### FIRST CLAIM FOR RELIEF
#### Violations of Section 5(a) and 5(c) of the Securities Act

53.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 52 of this Complaint.

54.    The promissory notes are securities.

55.    By engaging in the acts and conduct alleged above, the Defendants, directly or indirectly, singly or in concert, with respect to a security for which no registration statement was filed or in effect, and in the absence of any applicable exemption from registration: (a) carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, such security for the purpose of sale or delivery after sale; and (b) made use of a means or instrument of transportation or communication in interstate commerce or of the mails to offer to sell such security through the use or medium of a prospectus or otherwise.

56.     By reason of the foregoing, the Defendants, directly or indirectly, singly or in concert, have violated and, unless restrained and enjoined, will again violate Section 5(a) and (c) of the Securities Act [15 U.S.C. §§77e(a) and (c)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act

57.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 52 of this Complaint.

58.     The promissory notes are securities.

59.     By engaging in the acts and conduct alleged above, the Defendants, directly or indirectly, knowingly, recklessly, or negligently, singly or in concert, in the offer or sale of securities by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

60.     By reason of the foregoing, the Defendants, directly or indirectly, singly or in concert, have violated and, unless restrained and enjoined, will again violate Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

## THIRD CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

61.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 52 of this Complaint.

62.     The promissory notes are securities.

63.     By engaging in the acts and conduct alleged above, the Defendants, directly or indirectly, knowingly or recklessly, singly or in concert, in connection with the purchase or sale of securities, by the use of the means or instrumentality of interstate commerce, or of the mails, or of the facilitiy of a national securities exchange: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact, or omitted to state a material fact necessary in order to make the statement made, in light of the circumstances under which it was made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

64.     By reason of the foregoing, the Defendants, directly or indirectly, singly or in concert, have violated and, unless restrained and enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

**FOURTH CLAIM FOR RELIEF**
**Control Person Liability for Cash Flow Partners' Violation of Section 10(b)**
**of the Exchange Act and Rule 10b-5**

65.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 52 of this Complaint.

66.     The promissory notes are securities.

67.     Cash Flow Partners, directly or indirectly, knowingly or recklessly, singly or in concert, in the purchase or sale of securities by the use of the means or instrumentality of interstate commerce, or of the mails, or of the facility of a national securities exchange: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact, or omitted to state a material fact necessary in order to make the statement, made, in light of the circumstances under which it was made, not misleading; and (c) engaged in transactions,

12

practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of a security.

68.     By reason of the foregoing, Cash Flow Partners, directly or indirectly, singly or in concert, has violated and, unless restrained and enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

69.     At all times relevant hereto, Espinal was a controlling person of Cash Flow Partners for the purposes of Section 20(a) of the Exchange Act [15 U.S.C. §78t(a)].

70.     Espinal knowingly or recklessly engaged in fraudulent conduct that resulted in Cash Flow Partners' violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

71.     By reason of the foregoing, Espinal is liable as a controlling person pursuant to Section 20(a) of the Exchange Act [15 U.S.C. §78t(a)] for Cash Flow Partners' violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

A Final Judgment finding that the Defendants violated the securities laws and rules promulgated thereunder as alleged against them herein;

### II.

A Final Judgment permanently restraining and enjoining the Defendants, and their agents, servants, employees and attorneys and all persons in active concert or participation with

them, who receive actual notice of the injunction by personal service or otherwise, and each of

them, from future violations of Securities Act Sections 5(a), 5(c), and 17(a) [15 U.S.C. §§77e(a),

77e(c), and 77q(a)], Exchange Act Section 10(b) [15 U.S.C. §78j(b)], and Rule 10b-5 [17 C.F.R.

§240.10b-5] thereunder;

### III.

A Final Judgment directing the Defendants to disgorge their ill-gotten gains, plus pre-

judgment interest;

### IV.

A Final Judgment imposing civil money penalties upon the Defendants pursuant to

Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act

[15 U.S.C. §78u(d)(3)]; and

V.

Such other and further relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands that this case be tried by a jury.

Dated: New York, New York
December  15 , 2019

By:  _____
Marc P. Berger*
Lara S. Mehraban
Judith Weinstock
Christopher J. Dunnigan*
Kim Han*
Brenda Wai Ming Chang*
*Attorneys for Plaintiff*
U.S. Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0061 (Dunnigan)
Email: dunnigancj@sec.gov
* Not admitted in New Jersey

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is the subject of a criminal complaint pending in the United States District Court for the District of New Jersey captioned *United States v. Espinal*, 19-cr.7549. The matter here in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, to my knowledge.

By: _____

Christopher J. Dunnigan
Attorney for Plaintiff
U.S. Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Rm 400
New York, NY 10281-1022
(212) 336-0061

16

## **DESIGNATION OF AGENT FOR SERVICE**

Pursuant to Local Civil Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the undersigned designates the United States Attorney for the District of New Jersey to receive service of all notices or papers in the above captioned action at the following address: United States Attorney's Office, Civil Division, 970 Broad Street, Ste. 700, Newark, New Jersey 07102, shall constitute service upon the Commission for purposes of this action.

By: _____
Christopher J. Dunnigan
Attorney for Plaintiff
U.S. Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Rm 400
New York, NY 10281-1022
(212) 336-0061

17